UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MELINDA C. PADGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-351-SEB-JMS |
| | ) | |
| THOMAS BRODERICK, JR., | ) | |
| PROSECUTING ATTORNEY FOR | ) | |
| MADISON COUNTY, INDIANA, in his | ) | |
| official and individual capacities, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment
[Docket No. 38], filed on March 19, 2009, pursuant to Federal Rule of Civil Procedure 56
and Local rule 56.1.  Plaintiff, Melinda C. Padgett, brings her claim against Defendant,
Thomas Broderick, Jr., Prosecuting Attorney for Madison County, Indiana, in his official
and individual capacities, pursuant to 42 U.S.C. § 1983, alleging that she was terminated
in violation of her rights guaranteed under the First Amendment to the United States
Constitution.  For the reasons detailed in this entry, we <u>GRANT</u> Defendant's Motion for
Summary Judgment.

### Factual Background

Prior to January 1, 2007, Plaintiff Melinda Padgett had been employed for eight years by the Madison County Prosecutor's office as the Director of Victim Advocacy.[1] Throughout her tenure, Ms. Padgett had never been disciplined or otherwise counseled about poor job performance.  Affidavit of Melinda Padgett ("Padgett Aff.") ¶ 11.  Ms. Padgett is a member of the local Republican party and, in 2006, openly supported the Republican incumbent, Rodney Cummings, in his bid to be reelected as Madison County Prosecutor.  Defendant, Thomas Broderick, Jr., a Democrat, was the challenger in the race.  On November 7, 2007, the day of the general election, Ms. Padgett campaigned for Mr. Cummings at a polling site in Pendleton, Indiana.  In his deposition, Mr. Broderick testified that he saw her there, wearing his opponent's campaign button.  Deposition of Thomas Broderick, Jr. ("Broderick Dep.") at 33-34.  Mr. Broderick subsequently defeated Mr. Cummings and was elected Prosecutor of Madison County.

**Discontinuation of Plaintiff's Employment**

Following the election, Ms. Padgett wrote Mr. Broderick a letter in which she expressed her desire to retain her position and offered to meet to discuss her qualifications.  However, prior to taking office, and without first responding to her letter

---

[1] As a result of a 2008 Indiana legislative change, the position is now called "Director of Victim Assistance."  However, for consistency purposes, we will refer to the position as it was titled during the Ms. Padgett's tenure.

or otherwise contacting her to discuss the position, Mr. Broderick notified Ms. Padgett that he would not be retaining her as Director after he took office on January 1, 2007. Although Mr. Broderick declined to renew Ms. Padgett's employment, he did retain several other employees whom he knew to be Republicans.  Affidavit of Thomas Broderick, Jr. ("Broderick Aff.") ¶ 17.

According to Mr. Broderick, he made this decision for several reasons, including, but not necessarily limited to, the following: (1) he believed the fact that Ms. Padgett simultaneously held two government positions during her tenure as Director[2] created the appearance of impropriety and prohibited her from focusing her full attention on her duties as Director;[3] (2) he found Ms. Padgett to be distant and aloof, and, on several occasions, she failed to respond when they would pass each other in the courthouse and he would speak to her; (3) during the campaign, Mr. Broderick allegedly received

---

[2] In addition to working as the full-time salaried Director of Victim Advocacy, Ms. Padgett also served as an elected official in her capacity as the Adams Township Trustee/Assessor in Madison County, Indiana.

[3] In December 2006, Kelly Conover, who worked with Ms. Padgett in Victim Advocacy before Ms. Padgett was Director, interviewed with Mr. Broderick for the position of Director. During that interview, Ms. Conover told Mr. Broderick that, on numerous occasions, she (Ms. Conover) had seen Ms. Padgett working on projects, such as mailing letters and answering telephone calls, related to her duties as Trustee/Assessor during the hours she was on duty as an employee in the Victim Advocacy program.  Deposition of Kelly Conover ("Conover Dep.") at 25-26.  Ms. Conover also told Mr. Broderick that Ms. Padgett often failed to respond to victims who would leave telephone messages and would provide incomplete information to victims requiring assistance.  Id. at 26; 56-57.  However, because Ms. Conover left the Victim Advocacy Program before Ms. Padgett took over as Director, Ms. Conover never witnessed Ms. Padgett's performance in that elevated position.  Mr. Broderick subsequently selected Ms. Conover to replace Ms. Padgett as Director.

complaints from victims who were not receiving proper attention and information through the Victim Advocacy program while Ms. Padgett was the Director;[4] (4) in violation of grant proposals, Ms. Padgett did not maintain programs after receiving grants; and (5) during his campaign, Mr. Broderick promised to improve the Victim Advocacy Program and he felt the best way to accomplish that goal was to name a Director with a courteous personality who would dedicate his or her full-time attention to the position, which he did not feel Ms. Padgett was willing to do.  Broderick Aff. ¶ 11.

Not surprisingly, Ms. Padgett disputes many of Mr. Broderick's assertions. According to Ms. Padgett, she had always received praise for her work as Director of Victim Advocacy and was neither made aware of any complaints regarding her job performance nor counseled or disciplined for any deficiency.  Padgett Aff. ¶¶ 10-15.  Ms. Padgett also denies that she failed to respond to Mr. Broderick on any occasion when he spoke to her or that she otherwise acted in a disrespectful or cool manner in her dealings with him.  Id. ¶ 16.  Finally Ms. Padgett points to the fact that, while Mr. Broderick contends that he terminated her in part because she held dual governmental positions, Mr. Broderick himself had at one point held multiple governmental positions simultaneously[5] without any apparent concern regarding an appearance of impropriety.  Broderick Dep. at 13, 67-68.

---

[4] Mr. Broderick contends that he also personally witnessed the same problem when working with victims in his private law practice.

[5] Mr. Broderick was a member of the Madison County Council during a period of time when he also served as a part-time public defender and city attorney.  Broderick Dep. at 67.

**Director of Victim Advocacy's Job Description**

Under Indiana law, prosecuting attorneys are required to ensure that: "(1) victims are treated with dignity, respect, and sensitivity at all stages of the criminal justice process; and (2) the rights of victims are protected."  Ind. Code 35-40-6-2.  In order to fulfill those duties, Indiana law provides that a prosecuting attorney may contract with an individual to operate a victim assistance program, equivalent to the position of Director of Victim Advocacy at issue here, to provide the required services.  Ind. Code 35-40-6-3.

Pursuant to Indiana Code § 35-40-6-4, which governs victim assistance programs, either the prosecutor or the victim assistance program is required to provide various services to victims, including *inter alia*: informing victims that they may be present at all public stages of the criminal justice process, subject to certain limitations; timely notifying victims of all criminal justice proceedings in which they are involved and promptly notifying victims of any scheduling changes for court proceedings; obtaining an interpreter or translator when necessary; coordinating efforts of local law enforcement agencies that are designed to promptly inform victims of the availability of, and application process for, various community services[6] for victims and their families; and advising victims of other rights granted to them under the law.  Ind. Code 35-40-6-4.

The official job description for the position of Director of Advocacy Services

---

[6] Such services include: victim compensation funds; victim assistance resources; legal resources; mental health services; social services; health resources; rehabilitative services; financial assistant services; crisis intervention services; and transportation and child care services to allow victims to participate in court proceedings.  Ind. Code 35-40-6-4.

adopted by the Madison County Prosecutor's Office provides that:

> The Director of Advocacy is charged with the responsibility of writing, administering, and reporting the program's grant to all agencies with which funding is sought.  The Director is responsible for the monitoring of all victim services and direct supervision of all program staff and volunteers. In conjunction with the above duties, the Director serves as a victim advocate in assigned courts and is responsible for furthering the goals and objectives of the Victim Advocacy Program as outlined in the grant application.  This includes but is not limited to the provision of: emotional and practical support to victims of violent crimes, assistance with compensation and community referrals, and court accompaniment and case status information.  In addition, the Direotor [sic] serves on . . . various boards and organizations that promote the Victim Advocacy Program and the rights of crime victims.  The Madison County Prosecutor provides direct supervision of the Director.

Job Description ("Position Outline"), attached to Padgett Aff.

In addition to the general position description outline detailed above, Madison County's official job description includes a section entitled "Specific Duties," which lists various responsibilities of the Director, including, *inter alia*, "[a]ct as an advocate for victims with the police departments, hospitals, prosecutors, child protective services, and courts;" "[c]oordinate efforts with other service providers to ensure a cohesive and uninterrupted flow of victim services;" "[p]rovide assistance to the courts and prosecutors in understanding victim input regarding legal, monetary, and emotional resolution;" "[a]ttend various seminars and training beneficial to the promotions and understanding of victim services;" and "[c]omplete other duties assigned by the Prosecutor that promote the program and accomplish goals of the grant."  Id. ("Specific Duties").

6

**The Instant Litigation**

On February 25, 2009, Ms. Padgett filed her complaint in Madison Superior Court, pursuant to 42 U.S.C. § 1983, alleging that she was terminated because of her political affiliation, in violation of her rights guaranteed under the First Amendment to the United States Constitution.  On March 17, 2008, the case was removed to this Court.  Mr. Broderick contends that he is entitled to summary judgment on the following grounds: (1) Ms. Padgett's employment in the position of Director was discontinued for reasons wholly unrelated to her party affiliation; (2) the position of Director is one of political sensitivity, trust, confidence, and policy-making that is exempt from First Amendment protection; and (3) he is entitled to qualified immunity.

**<u>Legal Analysis</u>**

I.    **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  <u>See id.</u> at 255.

7

However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one

essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.     Discussion

### A.     *Prima Facie* Case

To make out a *prima facie* claim for politically motivated discharge in violation of the First Amendment, a plaintiff must show that: (1) she engaged in constitutionally protected conduct; and (2) the protected conduct was a substantial or motivating factor in her termination. Hall v. Babb, 389 F.3d 758, 762 (7th Cir. 2004). If a plaintiff is able to make the *prima facie* showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the termination. Id. Because Ms. Padgett's political support for Mr. Broderick's opponent in the 2006 election for prosecutor is constitutionally protected activity, we turn to the question of whether Ms. Padgett has demonstrated that Mr. Broderick was motivated, at least in part, by that conduct when he decided not to retain her as Director.

In order to demonstrate that political affiliation was a motivating factor for

termination, the plaintiff must first prove that the defendant was aware of the plaintiff's political activities.  Garrett v. Barnes, 961 F.2d 629, 632 (7th Cir. 1992) (citing Cusson-Cobb v. O'Lessker, 953 F.2d 1079 (7th Cir. 1992)).  Here, Mr. Broderick concedes that he recalls seeing Ms. Padgett at the polling site on election day in 2006, campaigning for his opponent and wearing his opponent's campaign button.  Thus, it is undisputed that Mr. Broderick was aware of Ms. Padgett's political association and endorsement of his opponent at the time he decided that he would not retain her as Director.

Ms. Padgett's claim nevertheless cannot survive summary judgment because she has failed to present sufficient evidence to support a finding that Mr. Broderick's decision not to retain her was motivated by his knowledge of her political activity.  Ms. Padgett presents no direct evidence to demonstrate that her termination was politically motivated. Instead, she relies on the following circumstantial evidence to support her claim: During the election, Mr. Broderick encountered her campaigning for his opponent, and then, once elected, informed her that she would not be retained as Director and replaced her with a campaign supporter without first responding to her request to interview to retain her position or otherwise speaking to her about her job performance.  According to Ms. Padgett, this chain of events, coupled with the fact that she had always performed her job satisfactorily,[7] raises the inference that her political association or activities were

---

[7] Ms. Padgett claims that Mr. Broderick's proffered legitimate reasons for deciding not to renew her employment, to wit, that he had heard complaints about her performance, that she was aloof, and that her other government position prevented her from concentrating fully on her duties as Director, are merely pretext for discrimination based on political association.  However, (continued...)

motivating factors in Mr. Broderick's decision not to renew her employment.

It is true that Ms. Padgett need not present direct evidence that her political association or activities were motivating factors for her dismissal; she may prove her case by circumstantial evidence.  However, under Seventh Circuit law, a plaintiff cannot meet her burden merely by demonstrating that she was performing her job satisfactorily, that she supported a different candidate, and that the successful candidate terminated her and then hired a political supporter.  Garrett, 961 F.2d at 633 ("Facts suggesting that a qualified person of one type was fired, and a person of another type was hired make out a prima facie case of race or sex discrimination, but they do not suffice to show discrimination based on political association.").  Nor does the factual record here support a finding that Mr. Broderick initiated a wide-scale practice of political patronage once taking office, which might bolster Ms. Padgett's claim.  See Hall, 389 F.3d at 764 ("[A] showing of a past pattern of political patronage may sometimes support a finding of political motivation.") (citing Felton v. Board of Com'rs of County of Greene, 5 F.3d 198, 202-204 (7th Cir. 1993)).  Indeed, Ms. Padgett does not dispute Mr. Broderick's assertion that, after taking office, he retained a number of other employees whom he knew to be Republicans in various positions.  See Def.'s Ans. to Interrog. No. 1.

---

[7](...continued)

Mr. Broderick need not prove a legitimate reason for his employment decision until Ms. Padgett has presented sufficient evidence to support a *prima facie* case of political motivation.  Garrett, 961 F.2d at 633.  Further, even if Ms. Padgett was performing satisfactorily as Director, that does not necessarily prove that Mr. Broderick did not honestly believe otherwise for reasons unrelated to political motivation.  Id.

In short, Ms. Padgett has failed to present sufficient evidence to create an issue of material fact as to whether political motivation was a substantial or motivating factor in Mr. Broderick's decision not to retain her as Director of Victim Advocacy.  For the foregoing reasons, we find that Ms. Padgett has failed to demonstrate a *prima facie* case of discrimination based on political motivation.

### B.  Whether Position is Exempt from First Amendment Protection

Even if Ms. Padgett were able to set forth a *prima facie* case, her claim nevertheless fails because we find that the Director of Victim Advocacy is a policymaking position subject to the exception to the general rule against patronage dismissals.  A public official may not be fired on the basis of her political affiliation or protected speech unless the nature of the official's job "makes political loyalty a valid qualification."  Riley v. Blagojevich, 425 F.3d 357, 359 (7th Cir. 2005) (citations omitted).  The First Amendment "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless political affiliation is an appropriate requirement for the position involved."  Rutan v. Republican Party of Illinois, 497 U.S. 62, 64 (1990).

Employment can be conditioned on political loyalty when the position involves "the making of policy and thus the exercise of political judgment."  Riley, 425 F.3d at 359.  To determine whether political affiliation is a valid qualification for a position, courts examine whether the "powers inherent" in the position "authorize[], either directly

or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." Kline v. Hughes, 131 F.3d 708, 709 (7th Cir. 1997) (quoting Americanos v. Carter, 74 F.3d 138, 141 (7th Cir. 1996)). Other factors to consider in making this determination include the degree of discretion and responsibility exercised in the position as provided by the official job description.[8] Allen v. Martin, 460 F.3d 939, 944 (7th Cir. 2006). The defendant "bears the burden of showing the exception to the general rule against patronage dismissals applies to the position in question." Kline, 131 F.3d at 710.

It is clear from our review of the official job description of the Director that the position involves broad discretion and authority to oversee all aspects of the Victim Advocacy Program and implement the Prosecutor's policies and goals as they relate to victim assistance. The official job description set forth by Madison County Victim Advocacy Services provides that the Director is responsible for "writing, administrating, and reporting the program's grant to all agencies with which funding is sought" and "furthering the goals and objectives of the Victim Advocacy Program as outlined in the grant application." (Job Description attached to Padgett Aff.). In fulfilling these responsibilities, the Director necessarily has considerable input into government decisionmaking as it relates to victim assistance and must be trusted to implement the

---

[8] The rationale for focusing on the official job description, rather than on the duties actually performed by the particular employee, is to increase efficiency and predictability by precluding the reexamination of a certain position every time a new administration bestows varying responsibilities upon an individual office holder. Tomczak v. City of Chicago, 765 F.2d 633, 640-41 (7th Cir. 1985).

program in a manner that comports with the Prosecutor's larger goals and objectives.

Further, because the position requires such a public presence, the Director's performance has a significant political impact.  The Director serves "on various boards and organizations that promote the Victim Advocacy Program and the rights of crime victims."  Id.  Additionally, the job description provides that the Director must cultivate relationships with a wide range of community organizations, including courts and law enforcement agencies, family and children services, and local health care systems in order to ensure that the program provides cohesive and comprehensive assistance to victims in need.  Even in fulfilling the position's ministerial duties, such as informing victims of upcoming court proceedings and keeping them apprised of their rights throughout the judicial process, the Director exercises meaningful personal contact with the public.  The Prosecutor must be able to rely upon the Director to represent his office in this capacity in a manner that conforms with his broader political message.[9]  Moreover, because the work of the Victim Advocacy Program is performed very much in the public eye, if the Director fails to effectively administer the program, the Prosecutor's public reputation is at stake.

Ms. Padgett claims that her former position is largely ministerial and that, because

---

[9] The Seventh Circuit has recognized that, because they have such broad public responsibilities, one of the significant problems facing prosecutors is that their policies must be implemented by subordinates.  Livas v. Petka, 711 F.2d 798, 801 (7th Cir. 1983).  In support of its conclusion that assistant prosecutors may be terminated for political reasons, the Livas court reasoned that "[t]he public interest in the efficient administration of justice requires that decisions made by such assistant prosecutors conform with the broad objectives chosen by the prosecutor."  Id.

the Madison County Prosecutor provides direct supervision of the Director, the Director is constrained by the general objectives established by the Prosecutor and unable to set policy.  However, Seventh Circuit precedent makes clear that determining the appropriateness of considering political affiliation in government hiring requires the court to look only to "the ability to offer *input* into government decisionmaking."  Allen, 460 F.3d at 945.  As the individual responsible for writing grants for the program and then implementing the plans to accomplish the objectives described in the grants, the Director has sufficient input to exempt the position from First Amendment protection against politically motivated dismissals.

Based on our review of the record, we find that Ms. Padgett has failed to present a *prima facie* case of discrimination based on political motivation.  Moreover, even had she cleared that hurdle, Mr. Broderick is nevertheless entitled to summary judgment because he has demonstrated that the position in question is subject to the exception to the general rule against patronage dismissals.  Accordingly, we GRANT Defendant's Motion for Summary Judgment.[10]

**III.    Conclusion**

For the reasons detailed above, we GRANT Defendant's Motion for Summary Judgment.  Final judgment will be entered accordingly.

---

[10] Because we grant Defendant's motion for the reasons discussed above, we need not address his alternative assertion that he is entitled to qualified immunity.

15

IT IS SO ORDERED.

Date: _07/28/2009_____

_SARAH EVANS BARKER, JUDGE_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

16

Copies to:

Eric James Beaver
INDIANA OFFICE OF THE ATTORNEY GENERAL
eric.beaver@atg.in.gov

Laura Lee Bowker
OFFICE OF THE INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Jeffrey A. Lockwood
LOCKWOOD WILLIAMS & HAPPE
lockwoodlaw@comcast.net